**STATE, Plaintiff, v. WEBB, Defendant.**

Common Pleas Court, Butler County.

No. 15651. Decided November 26, 1955.

Jackson Bosch, Pros. Atty., Herbert A. Walsh, Asst. Pros. Atty., Hamilton, for State of Ohio.

Paul A. Baden, Hamilton, Edward H. Dell, Middletown, for defendant.

## OPINION

By CRAMER, J.

This cause is before the court upon the defendant's motion to set aside the jury's finding of guilty and to grant him a new trial.

The defendant was convicted of buying property which was stolen, namely, two shot-guns, knowing the same to have been stolen. The principal ground upon which a new trial is sought is the court's failure

to withdraw from the consideration of the jury the testimony of one Andy Botos, the person who admittedly stole the guns and from whom the defendant admittedly purchased the same.

It is the defendant's contention that Andy Botos, who at the time of the trial was an inmate of the Florida State Penitentiary, had at one time, in 1938 or 1939, been adjudicated as insane and committed by the Probate Court of Butler County, Ohio to the Longview State Hospital for the Insane at Cincinnati, Ohio. That prior to Botos' testifying in this cause he had never been legally discharged from said institution as cured. The record from the State Hospital which had been filed in the Probate Court of this county revealed that Botos was released from the institution on a trial visit and was finally released as "unimproved" and for commitment to Mansfield State Reformatory.

The witness Botos testified in chief on behalf of the State in this cause and about half-way through his cross-examination the defendant made known to the court said witness' adjudication, commitment to the State Hospital, and the fact that he had not been discharged as cured, and his disability removed. The defendant learned of these facts during the cross examination of Botos and, in the absence of the jury, made a motion to the court to withdraw all of this witness' testimony.

In the absence of the jury the court rather extensively interrogated the witness Botos to determine his capacity to testify in spite of such presumed continued mental disability. After such hearing the court concluded that the witness had sufficient mental capacity to observe, recollect and communicate, and a sense of moral responsibility.

The defendant's motion to withdraw Botos' testimony from the jury was overruled and the jury instructed that the court had determined Botos was competent to testify but that they should consider his presumed continued disability insofar as it might affect his worthiness of belief. The court in its general charge gave the jury similar instructions as to the manner in which it was to consider Botos disability.

The defendant contends that in failing to withdraw Botos' testimony the court committed error prejudicial to him for the reason that under the law Botos was not competent to testify.

This then raises the question as to whether a person who has been adjudged to be of unsound mind is under the law absolutely incompetent. Sec. 2317.01 R. C., provides as follows:

"All persons are competent witnesses except those of unsound mind, and children under ten years of age who appear incapable of receiving just impression of the facts and transactions respecting which they are examined, or of relating them truly."

It is our opinion that the case of State v. Wildman, 145 Oh St 379, 31 O. O. page 5, answers our question in the negative.

The foregoing case which was a much stronger one insofar as the facts were concerned, for the two prosecuting witnesses were feeble minded and the charge against the defendant was having carnal knowledge of an insane person knowing her to be insane. The court quotes with approval the following, found in 2 Wigmore on Evidence (3rd Ed., 583, Sec. 492), wherein it is stated:

"There was a period (and it has not so long passed away) when the deranged and defective, in the superstitious belief of earlier times, which regarded madness as an affliction sent from heaven, were treated as incapable of being witnesses at all * * *."

"But this indiscriminate rule of exclusion, since the progress in popular understanding of mental derangement and defect has been modified and rationalized * * *—the law endeavors to make its tests fit the purpose.

"The question being whether the person is trustworthy as a witness, the law now asks whether in each case the derangement or defect is such as to make the person highly untrustworthy as a witness, it no longer excludes absolutely * * *."

The Supreme Court said, in the course of its opinion:

"Under the trend of modern decisions the fact that the witness is insane does not necessarily exclude him from the witness stand. With the development of science in the treatment of insanity, courts have come to recognize that a person may be insane and at the same time competent to be a witness."

It further stated that according to the general rule, the question of competency lies in the sound discretion of the trial judge, and, if he permits a witness of unsound mind to testify, his action in so doing is not a ground of reversal at the behest of an aggrieved party, unless there is an absence of discretion.

The court further announced that a person who is able to correctly state matters which have come within his perception with respect to the issues involved, and appreciates and understands the nature and obligation of an oath is a competent witness notwithstanding some unsoundness of mind. See also **Vol. 42, O. Jur., pages 113-114** wherein it is stated that while under the common law the testimony of an insane person was thereby rejected as wholly incompetent, that the rule has been modified to allow the admission of such testimony when a witness is able to understand what he is saying and the obligation of an oath, and is able to give a coherent statement touching the matter upon which he is examined.

We made a preliminary determination of the capacity of this witness in the absence of the jury and determined that he was competent to testify. No hardship necessarily resulted from this action since if we were in error in our conclusion, the jury had a powerful corrective in their right to pass upon the credibility of this witness as tested on the stand by the usual appliances. See State v. Scanlan, 58 Mo., 204.

It is our conclusion that we were not in error in refusing to withdraw Botos testimony from the jury. Even if there was error in permitting the jury to have such testimony it was not prejudicial to the defendant since, in our opinion, there was ample evidence to sustain this defendant's conviction without Botos' testimony.

The motion for new trial will therefore be overruled.